## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Paul Wotzka,

        Plaintiff,

v.

                                  **COMPLAINT**
                      **(JURY TRIAL DEMANDED)**

Gaylen Reetz and
The Minnesota Pollution Control Agency,

        Defendants.               Court File No._____

Plaintiff, by his attorneys Nichols Kaster & Anderson, PLLP, brings this action for damages and other legal and equitable relief from Defendants' violations of law, stating the following as his claims against Defendants:

### JURISDICTION AND VENUE

1.      This action arises under 42 U.S.C. § 1983.  Therefore, 28 U.S.C. § 1343(a)(3) confers jurisdiction upon this Court. Plaintiff also invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to consider state law claims.

2.      Venue is proper under 28 U.S.C. § 1391(b) because this is the judicial district where the Defendants reside and where a substantial part of the events giving rise to the claims occurred.

## PARTIES

3.      Defendant Minnesota Pollution Control Agency is a Minnesota state agency.

4.      Defendant Gaylen Reetz is a Minnesota resident who was employed by the MPCA in the position of Regional Division Director.

5.      Plaintiff Paul Wotzka is a Minnesota resident who was employed by the MPCA in the position of hydrologist.

## FACTUAL ALLEGATIONS

6.      Plaintiff Paul Wotzka began working as a hydrologist for the Minnesota Department of Agriculture (hereinafter "MDA") in October, 1990.

7.      During the course of his employment as a hydrologist with the MDA, Plaintiff was responsible for, *inter alia*

   a.  Collecting and submitting water samples for analysis and testing from various locations in Southern Minnesota.

   b.  Installing and maintaining water quality monitoring stations.

   c.  Populating the centrally maintained Compliance Management System database and conducting data analyses and interpretation for reports and scientific publications.

   d.  Coordinating the design, development, and implementation of a surface water and precipitation monitoring network for pesticides and nutrients in Southern Minnesota.

2

e. Evaluating pesticide concentrations and assessing whether such
   concentrations exceeded established standards.

f. Cooperating with other agencies and organizations to plan and
   design special surface and groundwater studies.

8. On October 4, 2006, the Minnesota Pollution Control Agency
(hereinafter "MPCA") offered Plaintiff a job as a hydrologist.

9. On October 4, 2006, Plaintiff resigned from his position as a
hydrologist at MDA.

10. On October 23, 2006, Plaintiff began working as a Hydrologist for
the MPCA.

11. On March 22, 2007, Plaintiff was contacted by State Representative
Ken Tschumper (District 31B) who requested that Plaintiff testify at a legislative
hearing the next day.

12. Plaintiff's testimony was going to be on the subject of atrazine.

13. Atrazine is a herbicide that is used primarily on corn in Minnesota.
It is the most commonly detected pesticide in Minnesota waters.

14. Atrazine is widely believed to be dangerous in the international
scientific community. In fact, atrazine has been banned in the European Union.

15. Plaintiff was going to testify about the knowledge he had gained of
atrazine concentrations in Minnesota's waters.

16. Specifically, Plaintiff intended to testify that MDA had
misrepresented its own data by claiming that the atrazine concentrations  in

3

Minnesota's rivers and streams were in compliance with current water quality standards.

17.    Plaintiff further intended to testify that the current atrazine concentrations are of significant concern and present a significant risk to Minnesota's environmental health.

18.    Specifically, Plaintiff intended to testify that according to many research studies, atrazine has endrocrine disruption properties. This means that atrazine has the ability to disrupt the reproductive systems of various species. Like DDT before it, atrazine has the potential to significantly impair the ability of various species to reproduce.

19.    Plaintiff intended to testify that one of the aspects that makes atrazine particularly dangerous to the environment is the fact that atrazine is persistent. This means that once atrazine enters the environment, particularly water, it takes a long time to break down into non-harmful substances. Stated another way, the effect of current atrazine levels will be felt for a long time.

20.    Plaintiff intended to testify that atrazine concentrations in groundwater, springs and rivers and streams nearly always exceed the concentrations at which endocrine disruption has been observed to occur.

21.    Plaintiff further intended to testify that one of the largest contributing factors to the exceedances of the atrazine water quality standards was the increased farming of row crops.

22.   Corn and other row crops are commonly grown with the assistance of atrazine. Row crops present a particular environmental hazard because at the beginning of the growing cycle, which is when atrazine is applied, there are relatively few barriers to the entry of atrazine into nearby groundwater, springs, rivers and streams.

23.   Plaintiff intended to testify that MDA's continuing support of corn for ethanol was a major contributing factor to increasing atrazine and nitrate concentrations in Minnesota.

24.   Currently, numerous agencies, including MDA, bear responsibility for monitoring and regulating the use of pesticides in Minnesota.

25.   Representative Tschumper was gathering testimony in support of H.B. 1997 (Attached hereto as "Exhibit A").

26.   Representative Tschumper's bill would have centralized the authority for monitoring and regulating pesticides in the Department of Health. Any such authority currently residing in the MDA would have been removed.

27.   Plaintiff inquired of his supervisor at MPCA via email as to whether he would be able to testify at the legislature in support of this bill.

28.   Plaintiff had previously provided his supervisor with a copy of the slide presentation he intended to use to supplement his comments at the legislature. A copy of Plaintiff's presentation is appended hereto as "Exhibit B."

29.     Ultimately, Defendant Gaylen Reetz (hereinafter "Reetz"), contacted Plaintiff via email and informed him that he could not testify. The purported reason given for this denial was that Plaintiff no longer worked for the MDA.

30.     Reetz's e-mail was cc'd to Dan Stoddard, the Assistant Director of the MDA.

31.     Plaintiff did not testify before the legislature about atrazine.

32.     On March 29, 2007, Plaintiff was informed that he was being placed on paid investigatory leave purportedly "related to missing data that is the property of the State of Minnesota."

33.     On May 8, 2007, Plaintiff was terminated from his position as a hydrologist with the MPCA.

34.     The reasons given for Plaintiff's termination in the termination letter he received from the Minnesota Department of Employee Relations were that Plaintiff had destroyed data belonging to the State of Minnesota which Plaintiff was purportedly responsible for keeping while he was an employee of the MDA.

35.     The termination letter also indicated that Plaintiff had improperly diverted mail from the MDA to his new office at the MPCA by filing a change of address form with the United States Postal Service.

36.     Despite Plaintiff's inquiries during the course of the investigation, the nature of the data Plaintiff was accused of destroying was never specified.

37.     Despite Plaintiff's inquiries during the course of the investigation, no mail was ever identified as mail that Plaintiff improperly diverted.

38.     The investigation was commenced in direct response to Plaintiff's request to testify about the atrazine monitoring result in Minnesota waters.

39.     The MPCA terminated Plaintiff in retaliation for his request to testify about the results of monitoring Atrazine concentrations in Minnesota waters on the environment.

## COUNT I

### Violation of 42 U.S.C. § 1983

40.     By reference hereto Plaintiff incorporates Paragraphs 1 through 30 of this Complaint.

41.     Plaintiff is a citizen of the United States who has rights, privileges and immunities as guaranteed by the Free Speech Clause of the First Amendment to the United States Constitution.

42.     42 U.S.C. § 1983 provides:

43.     Every person who, under color of any statute, ordinance, regulation, custom or usage of any State of Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

44.     Defendant Gaylen Reetz, acting with ill will and malice, acting under color of state law and acting in his official capacity for the MPCA and in his individual capacity, deprived Plaintiff of his constitutionally protected rights as guaranteed by the Free Speech Clause of the First Amendment to the United States Constitution.

7

45.     Plaintiff has suffered damages as a result of Reetz's conduct.

46.     The conduct described herein was deliberate and intentional and committed with malice, reckless disregard, or deliberate disregard for the rights of the Plaintiff. Plaintiff is entitled to his costs, disbursements and attorney's fees herein.

## COUNT II

### Violation of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932

47.     By reference hereto, Plaintiff incorporates Paragraphs 1 through 37 of this Complaint.

48.     Plaintiff and Defendant Minnesota Pollution Control Agency meet the definition of "employee" and "employer" respectively for the purposes of Minn. Stat. § 181.932.

49.     Minn. Stat. § 181.932 (1) declares that "[a]n employer shall not discharge . . . an employee . . . because: . . . (b) the employee is requested by a public body or office to participate in an investigation, hearing, [or] inquiry . . . ."

50.     Representative Ken Tschumper requested that Plaintiff testify in a legislative hearing. As a direct result of the legislature's request for Plaintiff's testimony, Defendant retaliated against Plaintiff by terminating his employment.

51.     Defendant's actions violate Minn. Stat. § 181.932.

52.     Plaintiff has suffered damages as a result of Defendant's violations of Minn. Stat. § 181.932.

8

53.   In addition, Plaintiff is entitled by law to his attorney's fees, costs and disbursements incurred herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paul Wotzka prays for judgment against Defendants as follows:

A.   For an Order awarding Plaintiff all relief available, including damages for lost income and benefits, mental anguish and emotional distress, and interest on those amounts, all in an amount in excess of $75,000.00;

B.   For all relief available under law for a violation of 42 U.S.C. § 1983;

C.   For all relief available under law for a violation of the Minnesota Whistleblower Statute, Minn. Stat. § 181.932.

D.   For Plaintiff's actual costs and attorneys fees in bringing this action;

E.   For leave to amend to include claims for punitive damages against Defendant Reetz;

F.   For an Order that Plaintiff be reinstated to his former position; and

G.   For such further and other relief as the Court deems just.

NICHOLS KASTER & ANDERSON, PLLP

Dated: June 14, 2007          [SIGNATURES FOLLOW ON NEXT PAGE]

By:_____
James H. Kaster #53946
Steven A. Smith # 260836
E. Michelle Drake #0387366
4600 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 256-3200

ATTORNEYS FOR PLAINTIFF